## 38245. GOODMAN v. DAVIS.

GREGORY, Justice.

After defendant Goodman's case had been called for trial and the jury had been sworn, he elected to enter a guilty plea to one count of burglary and three counts of aggravated assault on a peace officer.[1]

---

[1] By Goodman's own admission, he broke into the Henry Acres Clubhouse, ransacked the building, then attempted to escape through a window in the roof of the clubhouse when police officers surrounded him. The record shows that when the officers told Goodman to halt, he fired several shots in their direction.

The State chose not to proceed on the remaining count of the indictment. Appointed counsel represented Goodman at the guilty plea hearing. At the hearing the trial court questioned Goodman at some length to determine: whether he understood the nature of the charges against him and the consequences of entering his guilty plea; whether he was entering his plea freely and voluntarily; whether Goodman was under the influence of alcohol or drugs; and whether there was a factual basis for Goodman's plea. The trial court also advised Goodman of his rights to trial by jury and to confront the witnesses against him. Goodman stated that he understood he was waiving these rights by pleading guilty. The trial court then sentenced Goodman to twenty years on the burglary count and three ten-year sentences on the aggravated assault counts, all sentences to run concurrently.

Subsequently Goodman filed a petition for habeas corpus alleging that (1) his guilty plea is invalid because the trial court failed to advise him at the time he tendered the plea of his right against self-incrimination and (2) his guilty plea to the three counts of aggravated assault was not voluntarily entered. After a hearing the habeas court denied Goodman's petition. The habeas court concluded that, while Goodman was not advised of his right to remain silent, the transcript of the guilty plea hearing conclusively indicated that the guilty plea was freely and voluntarily entered. The habeas court then made a specific finding that the guilty plea to the three counts of aggravated assault on a peace officer was voluntarily made.

We granted Goodman's application to appeal.

(1) Goodman urges that, under the reasoning of Boykin v. Alabama, 395 U. S. 238 (89 SC 1709, 23 LE2d 274) (1969), the trial court's failure to determine, on the record, whether he knowingly waived his right against self-incrimination prior to accepting Goodman's guilty plea requires automatic reversal and entitles him to plead anew.

In Boykin the defendant pled guilty to five counts of robbery. The entire record of the guilty plea hearing stated only that: "This day in open court came the State of Alabama by its District Attorney and the defendant in his own proper person and with his attorney, Evan Austill, and the defendant in open court on this day being arraigned on the indictment in these cases charging him with the offense of Robbery and plead guilty." Boykin, supra, at 245, n. 1. Pursuant to Alabama law a trial, limited to the determination of punishment, was held. After hearing largely eyewitness testimony identifying the defendant as the perpetrator of the crimes, the jury sentenced the defendant to death. The Alabama Supreme Court

affirmed. Boykin v. State, 281 Ala. 659 (207 S2d 412) (1968). The United States Supreme Court granted certiorari and reversed, finding that "[i]t was error, plain on the face of the record, for the trial judge to accept [Boykin's] guilty plea without an affirmative showing that it was intelligent and voluntary." Boykin v. Alabama, supra, at 242. Acknowledging that a guilty plea "is itself a conviction," the court stated that in "determining whether a guilty plea is voluntarily made," "the same standard must be applied" as is applied in determining whether a defendant has made a valid waiver of a significant constitutional right. Id. In each instance the record must show that the right was "intelligently and understandingly" waived or that the guilty plea was "intelligently and understandingly" entered. "Presuming waiver from a silent record is impermissible." Id. Likewise, it is not permissible to presume from a silent record that a guilty plea was knowingly and voluntarily entered. The significance of requiring that a guilty plea be knowing and voluntary is magnified by the fact that a number of constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. In Boykin the court noted that the right against self-incrimination, the right to trial by jury and the right to confront one's accusers are all waived when a criminal defendant elects to plead guilty.

"What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence. When the judge discharges that function, he leaves a record adequate for any review that may be later sought." Boykin v. Alabama at 243-244.

We do not read Boykin as requiring the invalidation of a voluntarily made guilty plea where the record clearly reflects that the accused fully understands the nature of the charges against him and the consequences of entering a guilty plea, but the court fails to specifically advise him that he has a right to remain silent prior to accepting the guilty plea. Rather, we read Boykin as requiring that there be a record of the guilty plea hearing adequate for the reviewing court to determine whether (1) the defendant has freely and voluntarily entered the plea with (2) an understanding of the nature of the charges against him and (3) an understanding of the consequences of his plea. "If the record is deficient of such evidence, the state may not be able to show voluntariness in a later habeas corpus appeal. [Cits.] It is certainly good procedure 'for a state judge . . . to conduct a careful inquiry into the defendant's understanding of the nature and consequences of his plea . . .' " *State*

*v. Germany,* 245 Ga. 326, 328 (265 SE2d 13) (1980).

We cannot overlook the fact that in Boykin there was no record from which the Supreme Court could determine that the defendant voluntarily entered his plea, with an understanding of the nature of the charges against him and the consequences of his plea. The court could not, therefore, presume that the guilty plea was "knowing and voluntary." However, we are not faced in this case with a silent record, but a record which shows that Goodman understood the nature of the charges against him and the consequences of his guilty plea and that the plea was not induced by coercion, but was voluntarily entered.

Further, Goodman does not allege that he has been in any way prejudiced by the failure of the trial court to advise him of his right to remain silent. As stated above, Goodman, a seasoned defendant, was represented by counsel at the guilty plea hearing. As Goodman's case had been called for trial, and the jury selected and sworn, there is no doubt but that he understood he was entitled to a jury trial at which he could confront the witnesses against him. We are satisfied from our study of the record that Goodman comprehended the significance of the constitutional rights he was waiving. We decline to adopt a rule which would demand that failure to advise an accused of his right against self-incrimination invalidates a guilty plea in a case where the record reflects that the central considerations of Boykin have otherwise been met.[2] We find that any error in failing to advise Goodman of his right against self-incrimination is, under the facts of this case, harmless beyond a reasonable doubt. Chapman v. California, 386 U. S. 18 (87 SC 824, 17 LE2d 705) (1967). See also, United States v. Caston, 615 F2d 1111 (5th Cir. 1980).

---

[2] The standards for accepting a guilty plea in the federal courts are governed by Rule 11 Fed. R. Crim. P. (1975). Originally, the Rule required only that the accused enter the plea voluntarily, with an understanding of the nature of the charges against him. In 1966 the Rule was amended to require that the trial court personally inform the defendant of the nature of the charges and the consequences of a guilty plea; further, the amendment required that the trial court be satisfied that a factual basis for the plea existed before accepting it. See 383 U. S. 1097 (1966). In McCarthy v. United States, 394 U. S. 459 (89 SC 1166, 22 LE2d 418) (1969), the Supreme Court examined the 1966 amendments to the Rule and held that a defendant whose guilty plea has been accepted in violation of Rule 11 should be allowed to plead anew. In 1975 substantial amendments were made to Rule 11 including a requirement that the trial court inform the defendant of his right against self-incrimination, right to a trial by jury, and right to confront witnesses, then secure a valid waiver of these rights prior to accepting the guilty plea. The question now before the federal courts is whether the "automatic reversal" requirement for a violation of Rule 11 set out in McCarthy applies to the 1975-amendments to the Rule. In attempting to resolve this question the Circuits have split. The Fifth Circuit invokes the automatic reversal

We are careful to point out, however, that our opinion should not be construed as approving anything less than a scrupulous inquiry by the trial court into a defendant's understanding of the charges against him and knowledge of the consequences of his guilty plea. The record should clearly demonstrate that the guilty plea was knowingly and voluntarily made. These goals can best be facilitated by advising the defendant of the constitutional rights which are waived by pleading guilty and by recording the dialogue between the defendant and the trial court to illustrate that the defendant understands the significance of the rights he is waiving.[3]

(2) Goodman argues that his plea of guilty to the three counts of aggravated assault on peace officers was not voluntarily made. This is evidenced, he posits, by the fact that he contested the issue of his guilt

---

rule only when the trial court *wholly fails* to address the "core considerations" to the 1966 version of the rule, (i.e., absence of coercion, understanding of the charges and knowledge of the consequences of the plea) applying a harmless error standard to *inadequate addresses* of the "core considerations" and "to unrelated constitutional errors arising from Rule 11 proceedings." United States v. Dayton, 604 F2d 931, 939 (5th Cir. 1979) cert. denied 445 U. S. 904 (1980). The Fifth Circuit has specifically held that where the record demonstrates these "core considerations" are met, failure to inform the defendant of his right against self-incrimination will not invalidate the guilty plea. United States v. Caston, 615 F2d 1111 (5th Cir. 1980). *See also,* United States v. Cammisano, 599 F2d 851 (8th Cir. 1979) and United States v. Gray, 611 F2d 194 (7th Cir. 1979) which indicate that ritualistic compliance with all the requirements of Rule 11 is not necessary.

The Second Circuit has adopted an ostensibly inflexible interpretation of Rule 11, requiring automatic reversal unless the record demonstrates strict compliance with the Rule. United States v. Journet, 544 F2d 633 (2d Cir. 1976). *But see,* United States v. Michaelson, 552 F2d 472, 477 (2nd Cir. 1977) where the Second Circuit held that "it would be a needlessly rigid construction of Rule 11" to hold that a guilty plea must be set aside where the sole instance of non-compliance with Rule 11 was the failure to advise the defendant of his right to remain silent. It has been noted that those courts adopting the standard of automatic reversal frequently find themselves forced to carve out exceptions to the Rule or find compliance where, under a strict standard, there has obviously not been compliance with Rule 11. *See,* Edith A. Goldman, "Rule 11 of the Federal Rules of Criminal Procedure: A New 'Strict in Context' Approach," 22 Boston College Law Review, 815-846 (1980).

It is clear that the courts of this state do not require literal compliance with Rule 11. *State v. Germany,* 245 Ga. 326 (265 SE2d 13) (1980). While we have not adopted the requirements of Rule 11, we have nonetheless noted that it "contains a good list of the considerations of which the trial court must be satisfied before accepting a guilty plea." *Andrews v. State,* 237 Ga. 66, 67, note 1 (226 SE2d 597) (1976); *State v. Germany,* supra, at 328.

[3] We note that the *Georgia Superior Courts' Criminal Benchbook,* "Pleas," pp. 63-66 contains a checklist and dialogue which can serve as an appropriate guide to the trial court in making a record adequate to meet the central considerations of Boykin v. Alabama.

to these charges at the guilty plea hearing. During the course of his dialogue with the trial court at the guilty plea hearing, Goodman repeatedly insisted that he had not fired at the police officers who were attempting to apprehend him with the intention of harming them, but that he had fired "four or five" shots in the general direction of the officers to "create a commotion."

After Goodman announced his intention to plead guilty to four counts of the indictment, the trial court questioned him at length about the events surrounding the burglary charge.[4] The trial court then read the three counts of aggravated assault on a peace officer from the indictment and requested that Goodman relate the events underlying those charges. In response to Goodman's statements that he had not intended to harm any of the arresting officers, the three officers testified that Goodman shot directly at each of them. Each officer testified he feared at the time of this incident he would be hit by Goodman's fire. The trial court then informed Goodman that, under the facts presented, he "would be guilty of aggravated assault even if [he] did not intend to hit the officers if [he] made them think [he] was going to hit them." Subsequently, Goodman stated that he was "pleading guilty freely and voluntarily."

We conclude that the trial court did not err in accepting Goodman's guilty plea. We agree with the trial court that Goodman's professed lack of intent to harm the police officers would not preclude a determination that he was guilty of the crime of aggravated assault. See Code Ann. §§ 26-1302 (b); 26-1301 (b). An assault occurs when one commits an act which places another in reasonable apprehension of immediately receiving a violent injury. While Goodman denied he intended to injure the officers, he admitted that his purpose was to "scare them off." His statement does not amount to a denial of guilt. He merely misunderstood the elements of the offense of aggravated assault. This, standing alone, does not render his plea involuntary.

Furthermore, "while most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty. An individual accused of crime may voluntarily, knowingly, and un-derstandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." North Carolina v. Alford, 400 U. S. 25, 37 (91 SC 160, 27 LE2d 162) (1970). "[A] defendant [may] intelligently conclude that his interests require entry of a guilty plea [where] the

---

[4] Goodman concedes that his guilty plea to the burglary charge was voluntarily made.

record before the judge contains strong evidence of actual guilt." Id.

Goodman's case had been called for trial at the time he tendered his guilty plea. It, thus, cannot be said that he was unaware of his alternatives when he pled guilty, or that, in face of the State's case against him, he did not seek to select the alternative most beneficial to his own interests. Nor can we find support in the record for Goodman's allegation that his plea was not voluntarily made. "In view of the strong factual basis for the plea demonstrated by the State and [Goodman's] clearly expressed desire to enter it despite his professed belief in his innocence, we hold that the trial judge did not commit constitutional error in accepting it." North Carolina v. Alford, supra, at 38.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 10, 1982.

*Walters, Davis, Smith & Meeks, W. Edward Meeks, Jr.,* for appellant.

*Alexander Zipperer, Michael J. Bowers, Attorney General,* for appellees.